## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| APK, LLC, | ) | Case No. 14-23153 |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | Hearing Date: September 17, 2015 |
| | ) | Hearing Time: 10:00 a.m. |
| | ) | |

### NOTICE OF MOTION

To:   See Attached Service List

PLEASE TAKE NOTICE that we shall appear on **September 17, 2015 at 10:00 a.m.,** we shall appear before the Honorable Jacqueline P. Cox of the United States Bankruptcy Court, Northern District of Illinois, in Courtroom 680 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, or any judge sitting in her stead, and then and there present the **APPLICATION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO APK, LLC**, a copy of which is hereby served upon you.

> NATHAN Q. RUGG, ESQ. (ARDC #6272969)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Blvd., Suite 1050
> Chicago, Illinois 60604
> (312) 435-1050
> Fax (312) 435-1059
>
> **Counsel for APK, LLC.**

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the Notice and Motion referenced herein was served upon the parties listed on the service list below, via ECF as indicated below on September 4, 2015.

> _____/s/ Nathan Q. Rugg_____

436388v1 9/4/15

## SERVICE LIST

### *Via ECF*

Denise A Delaurent
Office of the U. S. Trustee, Region 11
219 South Dearborn Street, Room 873
Chicago, IL 60604
USTPRegion11.es.ecf@usdoj.gov

Nicholas C. Kefalos
Vernor Moran LLC
27 North Wacker Drive, Suite 2000
Chicago, IL 60606-2800
nkefalos@vernormoran.com

Arthur D Wellman
Wellman & Associates
11980 Duchess
Mokena, IL 60448
arthur.d.wellman@hotmail.com

Bruce Scalambrino
Christopher L. Muniz
Scalambrino & Arnoff, LLP
One North LaSalle Street, Suite 1600
Chicago, IL 60602
Counsel for GEMO Properties LLC
clm@sacounsel.com
bcs@sacounsel.com

Urban Partnership Bank, as assignee of the
FDIC as Receiver for ShoreBank
c/o Miriam R. Stein
Chuhak & Tecson, P.C.
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
mstein@chuhak.com
dgeorge@chuhak.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| APK, LLC, | ) | Case No. 14-23153 |
| | ) | Hon. Jacqueline P. Cox |
| Debtor. | ) | |
| | ) | Hearing Date: September 17, 2015 |
| | ) | Hearing Time: 10:00 a.m. |

### APPLICATION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO APK, DEBTOR IN POSSESSION

TO:   THE HONORABLE JACQUELINE P. COX
      U.S. BANKRUPTCY JUDGE:

Now comes Nathan Q. Rugg and Alexander F. Brougham on behalf of Adelman & Gettleman, Ltd., ("Movant"), counsel to APK, LLC, an Illinois limited liability company, debtor and debtor in possession herein ("APK", the "Company" or the "Debtor"), and hereby submits the following application and moves for the entry of an order for the allowance and payment of final compensation and reimbursement of ordinary and necessary expenses incurred in connection therewith as counsel to the Debtor during the pendency of this case under chapter 11 of the Bankruptcy Code (the "Code"), pursuant to Sections 330 and 331 of the Code and Rules 2002(a)(6), 2016, 9006(c) and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in support thereof, respectfully states as follows:

## I.   INTRODUCTION

This application (the "Application") seeks a final award with respect to the first and second interim applications submitted by Movant (collectively covering the period August 14,

2014 through May 31, 2015 (the "Interim Application Period"), and further encompasses the

three month period from June 1 through August 31, 2015 (the "Final Application Period"). The

Final Application Period reflects the continuing services by Movant in its successful efforts to

complete an orderly resolution of the Chapter 11 Case through the sale of the Debtor's assets and

business as a going concern and distribution of funds to creditors with liens on the Debtor's

assets.   As a result of the sale of substantially all of the assets of the Debtor and its primary

tenant, the value of the Debtors' assets have been maximized, the Debtors' secured creditors

received a substantial payment on their claims, the underlying businesses of such entities

continue, and the employees of such businesses have maintained their jobs.

This Application is Movant's third application for payment in this matter. Pursuant to

that certain *Application of Adelman & Gettleman, Ltd. for Allowance and Payment of Interim*

*Compensation and Reimbursement of Expenses as Counsel to APK, Debtor in Possession*

[Docket No. 78] (the "First Application"), the Court awarded Movant total interim compensation

for services performed from August 14, 2014 through October 31, 2014, in the amount of

$41,394.00 (in legal fees) and $685.53 (in costs).   Thereafter, and pursuant to that certain

*Second Application of Adelman & Gettleman, Ltd. for Allowance and Payment of Interim*

*Compensation and Reimbursement of Expenses as Counsel to APK, Debtor in Possession*

[Docket No. 108] (the "Second Application"), the Court awarded Movant interim compensation

for services performed from November 1, 2014 through May 31, 2015, in the amount of

$51,916.50 (in legal fees) and $117.53 (in costs).   As set forth in that certain *Application of the*

*Debtor to Employ Adelman & Gettleman as Substitute Legal Counsel* (filed August 15, 2014,

Docket No. 23), Movant received an advanced payment retainer of $15,000 from a third party

with no recourse against the Debtor, which retainer Movant previously applied to the fees awarded by the Second Application.

The APK case (the "Chapter 11 Case") has presented Movant with various responsibilities and challenges throughout the Final Application Period, which primarily revolved around the going concern sale of the Debtor's assets and business. From the outset of the Chapter 11 Case, APK has had no shortage of issues which needed to be addressed arising from, among other things, a lack of financing alternatives, an actively involved secured creditor, Urban Partnership Bank ("Urban"), and negotiations among many interested parties surrounding the sale of assets, which are valued at an amount significantly less than the secured claims of record.   As set forth in the First Application, Movant initially assisted APK to "right the ship" after some initial missteps in the case that resulted from advice from and inaction by the Debtor's prior counsel.

Having resolved many of the issues that were presented to Movant when it took over as counsel for the Debtor, Movant has thereafter focused its efforts in guiding the Debtor through negotiations for a sale of substantially all of the Debtor's assets. Such efforts dominated the Movant's time during the Second Interim Period and Final Application Period.   While the Chapter 11 Case is a "single asset real estate" case, the sale of the Debtor's assets has been an unusually complex affair, as the Debtor (and its primary secured creditor, Urban) determined that the highest and best price available for the Debtor's assets to be available through a sale that includes the assets of Debtor's largest tenant, A.P. Machine, Inc., an Illinois corporation ("AP Machine").   Movant previously guided the Debtor through months of negotiations and collateral discussions with the proposed "Stalking Horse" buyer, Urban, AP Machine (represented by

separate counsel) and other interested parties, which culminated in the execution of a Sale and

Purchase Agreement and the filing of a "sales procedure" motion for the entry of an order: (A)

approving the sale process and bidding procedures with respect to the sale of substantially all of

the assets of the estate; (B) granting the Debtor authority to enter into a sale contract with

stalking horse bidder; (C) approving bid protection and break-up fee provisions; (D) scheduling

a public auction and authorizing the sale of the assets of the Debtor pursuant thereto free and

clear of liens, claims, encumbrances and interests; and (E) authorizing the assumption and

assignment of executory contracts and unexpired leases [Docket No. 97] (the "Sales Procedure

Motion").   This Court granted the relief sought in the Sales Procedure Motion (per that certain

order entered as Docket No. 104, the "Sales Procedure Order"), and Movant has thus helped

position the Debtor to realize a successful conclusion of this Chapter 11 Case.

During the Final Application Period, Movant dedicate nearly 80 hours of professional

services to finalize the sale through closing, which required among other things: effecting the

process established by the Sale Procedure Order; assisting with the marketing of the sale assets;

continuous (and sometimes daily) negotiations with the Stalking Horse, other interested bidders,

the SBA, Urban, AP Machine regarding the terms of the comprehensive sale, releases of liens

and interests of undersecured parties, and the related closing documents and provisions; drafting

closing documents; ensuring compliance with various local ordinances for transfers of the assets;

court appearances; and drafting and obtaining entry of a sale order approved by the Stalking

Horse.

In total, as reflected herein, Movant has expended 111.2 hours of professional legal

services during the Final Application Period and is seeking payment of the fees associated

therewith in the total amount of $**46,579.00** and reimbursement of expenses actually paid in the amount of **$164.84**, for a total reimbursement and payment of **$46,743.84** as final compensation for the Final Application Period.

Movant submits that the efforts put forth and the results achieved to date amply support the allowance of the final compensation requested herein. Movant has acted as consultant, negotiator, arbitrator, analyst, draftsman and legal advisor. Movant has guided the Debtor through numerous issues which have arisen to reach a successful conclusion of the Chapter 11 Case, many of which continued or arose after the entry of the Sales Procedure Order.   As more fully set forth below, Movant expended significant efforts throughout the entire Interim Application Period and the Final Application Period and at all times endeavored to maximize the value of all assets in this estate for the benefit of all creditors and other interested parties herein and minimize the expenses incurred in connection therewith.

## II.   HISTORY OF THE COMPANY AND CHAPTER 11 CASE

### A.   The Debtor's Business and Goals of the Chapter 11 Case

1.      The Debtor owns and operates a commercial/industrial real property commonly known as 1975 N. 17th Avenue, Melrose Park, IL 60160-1348 (the "Property"), which constitutes the Debtor's sole asset.    The Debtor is a business entity which derives its gross income primarily from two tenants who lease industrial space on the Property, and two tenants with month-to-month leases of parking space.

2.      The Property serves as collateral for two loans under which the Debtor is obligated, the second of which is wholly unsecured. Additional factual background relating to the Debtor's prepetition financing, and the litigation to which the Debtor was a party on the

Petition Date, are set forth in detail in that certain *Motion of the Debtor for Entry of An Agreed Order Authorizing Use of Cash Collateral and for Related Relief* [Docket No. 49].

3.      The Debtor's Amended Schedules D, E, and F reflect that the universe of creditors who may potentially participate in the Chapter 11 Case is relatively small. [*See* Docket Entry No. 34].   The schedules identify three potential secured claims, three priority unsecured claims (each in the amount of $0.00), and twelve non-priority unsecured claims, several of which are listed in the amount of $0.00 or as being for "notice only." *Id*.

4.      Urban, the Debtor's primary secured lender also has outstanding secured loans issued to the primary tenant at the Property, AP Machine.

5.      Prior to the filing of the Chapter 11 Case the Debtor attempted to resolve certain litigation brought by its lender through a sale of the assets of both the Debtor and to A.P. Machine.   The Debtor could not, however, obtain the consent of the U.S. Small Business Association (the "SBA") with respect to its debt and second mortgage on the Property.   The SBA loan is guaranteed by AP Machine.

6.      After evaluating various strategic alternatives, the Debtor concluded that the best mechanism for maximizing the value of its assets is through filing the Chapter 11 Case and thereafter file a plan of reorganization to refinance the debt owed its primary secured lender and/or to conduct a going concern sale of its business.

**B.      Use of Cash Collateral in the Chapter 11 Case**

Since the Petition Date, the Debtor has been operating on the cash collateral (the "Cash Collateral") of Urban.   Pursuant to the Debtor's initial motion for authority to use the Cash Collateral [Docket No. 49], this Court entered on September 24, 2014 that certain *Interim Order*

*Authorizing Use of Cash Collateral and Granting Adequate Protection* [Docket No. 54] (the

"Interim Order") with the Consent of Urban.   Since entry of the Interim Order, the Debtor has

operated on Cash Collateral by agreement with Urban and pursuant to subsequent interim cash

collateral orders entered by this Court and the "Subsequent Budgets" (as defined in the Interim

Order) from time to time.

### C.    Sale Process and Closing of Sale

7.      On August 28, 2015, APK filed that certain *Motion of Debtor for Entry of an*

*Order Dismissing the Chapter 11 Case and Granting Related Relief* [Docket No. 130] (the

"Motion to Dismiss"), which details many events in the Chapter 11 Case, including the events

occurring after the entry of the Sale Procedure Order through the "Closing" of the sale

transaction.   By reference, Movant incorporates herein the Motion to Dismiss and the

statements made therein; this Application will be presented on the same date as the Motion to

Dismiss.

8.      As of the date of the date of the Closing, substantially all assets of the Debtor's

estate have been sold.   Movant played an integral and critical role in the sale process and

ensuring that the sale transaction closed.   Movant was required to work on a daily basis with all

parties to the transaction, including UPB, SBA, debtor's ownership and management, AP

Machine, the Stalking Horse, the title company, the Village of Melrose Park, other bidders and

other parties in interest to ensure that all necessary consents, releases, sale documents and court

orders were entered and completed to close the transaction.

9.      The Movant has thus greatly assisted the Debtor's efforts to resolve this Chapter

11 Case through a sale of substantially all of its assets as a going concern business, which is now

complete.

### III.   LEGAL SERVICES RENDERED

For ease of reference, Movant has identified and set forth seven categories of legal

services provided throughout the Chapter 11 Case (only four of which are at issue in this Final

Application): (1) Administrative Matters; (2) Cash Collateral; (3) Asset Sale Efforts; (4) Plan of

Reorganization and Disclosure Statement; (5) Fee Petitions and Retention of Professionals; (6)

Secured Creditor Issues; and (7) Unsecured Creditor Issues. Each category contains a narrative

of the matters involved; a general description of the tasks performed; detailed time records in

chronological order, with each attorney's time described therein, and the nature and purpose of

such entries; and the result achieved or benefit to the estate, as required by In re Wildman, 72

B.R. 700 (Bankr. N.D. Ill. 1987); In re Pettibone Corporation, 74 B.R. 293 (Bankr. N.D. Ill.

1987); and Matter of Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992).

For ease of review, all legal services described in this Application will be summarized as

follows: (1) the first chart set forth below reflects services rendered by category as evidenced by

the Movant's invoices attached as **Exhibits A-D** hereto; and (2) prior to the discussion of each

individual category of services rendered which follow, the second group of charts will reflect the

total of all of the services rendered in that category by Movant, by attorney, during the Final

Application Period.

As indicated by the above-referenced charts and the support for same, the majority of the

time expended in this case was rendered by Nathan Q. Rugg. However, the difficulties in the

Chapter 11 Case at times required services of additional members of Movant. The Movant,

however, has exercised billing judgment and has either not billed for or significantly reduced the

actual charges for any of the necessary interaction among its attorneys. The complexities of the

Chapter 11 Case have at times required the efforts and attention of Mr. Rugg, to the almost total

preclusion of other matters. The efforts required and expended by members of Movant during the

Final Application Period amply supports the allowance of interim compensation requested

herein.

    The total of all services rendered during the Final Application Period by category may be

summarized as follows:

### FINAL APPLICATION PERIOD
#### (June 1, 2015 – August 31, 2015)

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| **A.      Administrative Matters** | 13.3 | $      5,147.50 |
| DESCRIPTION | TOTAL HOURS | TIME VALUE |
| **B.      Cash Collateral** | 2.5 | $      1,087.50 |
| DESCRIPTION | TOTAL HOURS | TIME VALUE |
| **C.      Asset Sale Efforts** | 79.3 | $    34,066.50 |
| DESCRIPTION | TOTAL HOURS | TIME VALUE |
| **D.      Plan of Reorganization** | 0 | $      0.00 |
| DESCRIPTION | TOTAL HOURS | TIME VALUE |
| **E.      Fee Petitions & Applications** | 16.1 | $      6,277.50 |
| DESCRIPTION | TOTAL HOURS | TIME VALUE |
| **F.      Secured Creditors** | 0.0 | $      0.00 |
| DESCRIPTION | TOTAL HOURS | TIME VALUE |

| G. Unsecured Creditors | 0.0 | $ 0.0 |
|---|---|---|
| TOTAL | 111.2 | $ 46,579.00 |

A. **ADMINISTRATIVE MATTERS**

**Services Rendered During the Final Application Period**

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 7.5 | $435 | $ 3,262.50 |
| AFB | 5.8 | $325 | $ 1,885.00 |
| TOTAL | 13.3 | | $ 5,147.50 |

Movant expended approximately 13 hours during the Final Application Period in connection with the performance of the debtor in possession's duties under Section 1107 of the Code and the numerous administrative and related matters arising herein. These matters included the many miscellaneous services that are usually required to be furnished on behalf of a debtor in Chapter 11 case.

As evidenced by the attached monthly statements, the efforts rendered by Movant in this category include:

(i) Operating Reports. Movant worked to ensure the timely filing and dissemination of the debtor in possession operating reports and other financial statements as well as rendering the necessary assistance to the Debtor as required regarding same;

(ii) Communications with Office of United States Trustee. Movant provided the office of the UST with constant updates on all matters arising in the Chapter 11 Case and sought input from the UST on same; and

(iii) Tax Inquiries. Movant also worked with Debtor to ensure compliance with its post-petition tax reporting requirements.

As demonstrated by the foregoing, Movant's services in the Administrative Matters category during the Final Application Period (similar to the Second Interim Period) were significantly reduced from the Interim Period, as a result of Movant's success in correcting and amending many of the missteps taken by Debtor through the guidance of formal counsel during the first two months of the Chapter 11 Case.

**B.   CASH COLLATERAL**

**Services Rendered During the Final Application Period**

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| NQR | 2.5 | $435 | $      1,087.50 |
| TOTAL | 2.5 | | $      1,087.50 |

Movant expended 2.5 hours during the Final Application Period primarily in connection with (a) limited court appearances regarding the status of use of cash collateral by the Debtor, and (b) negotiations of "Subsequent Budgets" employed by the Debtor and Urban under the Interim Order to ensure continued use of cash collateral without requiring costly repeated court appearances and new orders to be entered by the Court.

**C.   ASSET SALE EFFORTS**

**Services Rendered During the Final Application Period**

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| NQR | 75.4 | $435 | $      32,799.00 |
| AFB | 3.9 | $325.00 | $      1,267.50 |

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| TOTAL | 79.3 | | $    34,066.50 |

Movant expended approximately nearly 80 hours during the Final Application Period in connection with the closing the sale of substantially all of the Debtor's assets. During the Final Application Period the sale efforts of the Debtor dominated the attention and guidance from Movant, as a sale of substantially all assets of the estate has presented itself as the best option for the Debtor to resolve the Chapter 11 Case in light of the significant secured debt at issue herein and the apparent lack of viability of a plan of reorganization. In order to proceed to closing with the Stalking Horse, Movant guided and advised Debtor over the course of three months, which required work on the following tasks and project, among others:

(i)    Negotiations with counsel for Urban and the SBA related to terms of potential sale, including getting consent of both undersecured creditors for releases related to Debtor's and AP Machine's assets;

(ii)    Negotiations with counsel for AP Machine and the Stalking Horse to ensure that a comprehensive sale would be achieved, as the Stalking Horse offer was contingent upon the related sale of AP Machine's assets and a new employment agreement with management of the Debtor;

(iii)    Draft and negotiate with counsel for the Stalking Horse terms of numerous closing documents;

(iv)    Preparation and sending of various notices to creditors, interested parties and parties to executory contracts and leases as required by the Sales Procedure Order;

(v)    Negotiate terms and duration of public notice of Auction and Bidding Procedures.

(vi)    Work with counsel for AP Machine to resolve issues common to the Debtor related to Urban and SBA and their liens;

(vii)    Analysis of terms of sale offer and new offer from potential Qualified Bidder;

(viii)   Draft, review and revision of lengthy Sale Order, negotiating terms of Sale Order, and presentation of same for approval by this Court;

(ix)   Analysis of assumption and rejection issues under 11 U.S.C. § 365, negotiations of same with counsel for Stalking Horse and finalizing required notices to non-debtor parties;

(x)   Continued analysis of potential use of broker and related marketing issues, and related negotiations with secured creditors regarding same and related use of cash collateral in the most cost-effective manner;

(xi)   Review and analysis of updated title commitment and related negotiations with Stalking Horse and title company for the removal of liens and encumbrances;

(xii)   Analysis and calculation of available sale proceeds and negotiations of funds available for Urban and the SBA, and resolution of issues related to payout to each creditor related to priorities and inter-creditor agreement where funds are insufficient to pay secured claims in full;

(xiii)   Work with title company, Stalking Horse and lenders to ensure closing proceed, necessary leases were obtained and payouts made;

(xiv)   Work with Stalking Horse and APK to ensure compliance with various Village of Melrose Park requirements for closing, including resolving dispute related to payment of certain closing costs related to same; and

(xv)   Preparation for and attend lengthy closing to ensure completion of same in accordance with Sale Order, asset purchase agreement and related state and local requirements.

Through the Movant's efforts in this category the Debtor was able to resolve the Chapter 11 Case through the sale of its assets as a going concern despite the fact that the secured creditors filed claims in this case in the total approximate amount of $2 million (see Claim Nos. 1 (Urban) and 3 (SBA) filed in the Chapter 11 Case), whereas the proposed purchase price of the Property under the SPA is $850,000.00.

### D.   FEE PETITION AND APPLICATIONS

#### Services Rendered During the Final Application Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 9.50 | $435 | $   4,132.50 |
| AFB | 6.60 | $325 | $   2,145.00 |
| TOTAL | 16.1 | | $   6,277.50 |

Movant expended approximately 16 hours during the entire Final Application Period in the preparation of the Debtor's final application for compensation of the Debtor's accountant and preparation and filing of the Second Interim Application and this final Application, as well as related notices and pleadings.

### E.   SECURED CREDITORS

All of the work performed by Movant during the Final Application Period related to Urban and SBA arose from the negotiation of the payment on their claims in connection with the sale transaction pursuant to the Sale Order, and is thus reflected in the Asset Sale category.

### IV.   STANDARDS FOR REVIEW OF APPLICATION

The Court need look no further than Local Rule 5082-1 and the opinions in In re Pettibone Corp., 74 B.R. 293 (Bankr. N.D. Ill. 1987), and In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987), for the applicable standard of review of the Application. The court in Pettibone stated:

> Under Section 330 of the Bankruptcy Code, professionals applying for fees must demonstrate *in writing* that their services were (1) actual; (2) necessary, and (3) reasonable.   Once services have been performed, Bankruptcy Rule 2016 requires that:

> A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the

> court an application setting forth a *detailed* statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.   (Emphasis added)

These detailed applications establish the "actual," while an accompanying narrative explanation of the "how" and "why" establishes the "necessary."

The primary objective of any fee petition is to reveal sufficient data to enable the Court to determine whether the services rendered were reasonable, actual and necessary.   <u>In re Jensen-Farley Pictures, Inc.</u>, 47 B.R. 557 at 582 (Bankr. D. Utah 1985).

<u>Pettibone</u>, 74 B.R. at 301 (emphasis in original).

While a bankruptcy court has wide discretion in reviewing a fee petition, such authority must be dispensed with great care and fairness, <u>Wildman</u>, 72 B.R. at 705, keeping in mind that the well-accepted goal is to encourage and induce capable attorneys to practice in the court, <u>Pettibone</u>, 74 B.R. at 306.   In analyzing a fee petition, the Court must determine "what the lawyer would receive if he were selling his services in the market rather than being paid by court order."   <u>In re Continental Illinois Securities Litigation</u>, 962 F.2d 566, 568 (7th Cir. 1992) (citations omitted).   Moreover, as stated in <u>Boston and Maine Corp. v. Moore</u>, 776 F.2d 2 (1st Cir. 1985), the Court should focus on the benefits to the estate and the quality of the performance of counsel in the context of the case as a whole:

> Given these circumstances, it is important for a court to maintain "a sense of overall proportion," <u>Gabriele v. Southworth</u>, 712 F.2d 1505, 1507 (1st Cir. 1983), and not "become enmeshed in meticulous analysis of every detailed facet of the professional representation," <u>Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.</u>, 540 F.2d 102, 116 (3d Cir. 1976) ("Lindy II").   It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner.   On the other hand, it is also possible that [the debtor] would not have enjoyed the success it did had its counsel managed matters differently.   Fee-cutting "ideally should be tempered with a view towards the *need for the services at the time they were rendered*."   <u>In re Casco</u>, 25 B.R. at 756 (emphasis added).

Id. at 10.

Movant has endeavored to prepare this Application in accordance with the standards and guidelines outlined in Pettibone and Wildman:

Form of Application

1.    Itemized Daily Entries - The Monthly Statements (Exhibits A-D) evidencing work for Categories 1 through 7, as applicable, contain detailed entries listing the subject activity; the date; the time spent; the nature of the services rendered; and the purpose for same. Explanations are included to inform the reader of the circumstances giving rise to the activity.

2.    Telephone Conferences - Telephone conferences are detailed with disclosure of the topic of discussion, as well as the person called and reason therefor.    Telephone conferences are cost beneficial to the estate as they provide the most efficient way to handle the numerous matters involved.

3.    Meetings and Office Conferences - Where a meeting is described, the persons present and topics discussed are set forth.

4.    Drafting - The drafting of documents, letters, motions and orders is clearly delineated.    The complexity of the matters and the numerous parties involved often dictated many revisions.

5.    Legal Research - While the members of Movant have devoted substantially all their professional careers to the practice of commercial law, bankruptcy, insolvency and corporate reorganizations, legal research was essential on numerous occasions in a case of this magnitude.    A lawyer who does not spend considerable time researching case law is doing a disservice to his client, and will soon find out that the rapidly evolving field of bankruptcy law is

leaving him or her behind.    Indeed, the Seventh Circuit has recognized the need and

requirement for constant research and preparation by attorneys, even in their own specialized

areas of concentration.    See Continental Securities, 962 F.2d at 570 (when addressing the fee

request of securities lawyers in a class action securities lawsuit, the Court stated that "no one

carries the whole of federal securities law – not only the many detailed statutes and regulations

but the thousands of decided cases – around in his head, and a lawyer who tries to respond to a

motion or brief without conducting fresh research is courting sanctions or a malpractice suit.")

6.    Minimum Time - Movant does not apply a uniform amount of time to a particular

activity.    The time entries herein have been kept on a tenth of an hour basis.    The Court should

be sensitive, however, to the reality that bankruptcy cases do not lend themselves to meticulous

time keeping.    Oftentimes, a lawyer's need to concentrate, the press of time and the emotion and

energy involved, interfere with time keeping with exacting detail.    Great care has been utilized

to keep reasonably accurate time.

7.    Lumping - Movant has endeavored to avoid grouping a number of unrelated

activities into the same time entry.    The Court should, however, keep in mind that in a case of

the complexity of this case, meetings or telephone conferences will involve the discussion of

numerous topics and several telephone calls may be made to a number of parties in rapid

succession on one or more topic areas.    The entries elaborately describe each activity with

identification of the party, the purpose of the activity and in many cases, the necessity thereof.

Such grouping is unavoidable, but the informative explanations herein serve to further describe

and delineate the time spent.

## V.  <u>BILLING JUDGMENT AND AVOIDANCE OF DUPLICATION OF SERVICES</u>

As set forth in <u>In re Pettibone</u>, 74 B.R. at 303, Section 330 of the Code provides that

compensation for actual and necessary services makes the exercise of billing judgment

"mandatory" in bankruptcy fee petitions. The estate should not bear the burden of duplication of

efforts which should be avoided by the exercise of good billing judgment.

Movant is a small firm, which by definition prevents any significant duplication of

efforts.   Herein, Nathan Q. Rugg performed the vast majority of services in connection with the

representation of the Debtor.    The extensive initial efforts required in this case have, of

necessity, also involved other members of Movant, but as evidenced by the time actually billed

the Movant has taken great care to remove and/or reduce billing for efforts that involved more

than one attorney. Further, every effort has been made to delineate specific tasks and in so doing,

to prevent an unnecessary overlap in representation.    While certain matters required joint

consultations, duplication has been judiciously avoided.    When two attorneys were needed, they

were only involved due to the great complexity of a given matter, the press of business, or if

another member of the firm was handling a matter in some way connected with another activity.

So, too, as with other matters, certain interoffice conferences between partners of the firm or a

partner and an associate occurred as were necessary and beneficial for the estate.

The benefit to the estate from these activities resulted in an associate being able to

perform certain services which brought with it the lowered rates of the associate and also the

associate's greater availability to perform such services. It is not realistic to expect associates

with limited experience in a case to operate as efficiently as a partner with greater experience not

only in a given case but in the practice of law. Accordingly, some joint participation in a case of

this magnitude and activity is unavoidable. In fact, however, such overlap ultimately resulted in a more efficient and economic expenditure of time.

Practically speaking, a small firm such as Movant's does not have the luxury of having more than one attorney generally handle any particular task. So, too, in a case with issues as complex as those presented to Movant here, at times certain problems required the collective judgment of the attorneys in the firm. Again, however, a review of the detailed statements of services rendered by Movant in this case reflects that duplication of services, albeit at times necessary, was kept to an absolute minimum and in fact generated cost-benefits to the estate. The appropriateness of the billing judgment of Movant can best be supported by the following analysis of the factors set forth in Pettibone:

A.    Individual Responsibility - A review of this Application will show that a minimal amount of conferring occurred in the case.    When interoffice conferences were required, they were required only to facilitate the coordination of effort and avoid the duplication thereof.    The Court will find few, if any, lengthy interoffice conferences given the complexity of the Chapter 11 Case.    Movant has prepared this Application to comply with the billing guidelines for office conferences as set forth in In re Adventist Living Centers, Inc., 137 B.R. 692, 697 (Bankr. N.D. Ill. 1991).    In conformity with Adventist Living Centers, Movant has billed only "active" attorney's time for office conferences. However, if the office conference constituted (i) a "status" conference wherein one attorney advises another as to matters pending in a case and often assigns future work to be performed or (ii) a "strategy" conference wherein one or more attorneys determine the course of action to be taken, then Movant has billed for all attorneys involved in the conference.

B.     <u>Court Appearances and Meetings</u> - In the approximate 111 hours reflected in this Application, there is no instance where more than one attorney attended a particular court appearance.   Meetings for particular matters have with rare exceptions been attended by only one attorney.   On certain occasions, it may have been necessary for more than one attorney to attend a meeting or telephone conference.   The use of more than one attorney was precipitated by the fact that such discussions usually led to the delegation of several different activities, or involved discussions concerning information that could best be gained firsthand.

C.     <u>Appropriate Level of Skill</u> - Herein, Mr. Rugg has had a significant role in the representation of the Debtor in those areas requiring the services of more experienced practitioners.   Where appropriate, however, the legal work was handled by other members of the firm, primarily including Mr. Brougham, to take advantage of lower billing rates.

D.     <u>Legal Research</u> - Most of the legal research was performed by members of the firm with lower hourly rates to further reduce the amount of fees in this case.

E.     <u>Document Review</u> - A careful review of the detailed time entries will reflect that there are very few entries for one attorney reviewing the work product of another attorney.   In the rare cases where such examination appears, it was necessary as a result of the press of time and complexity of the matter involved.   It is both necessary and expected that such complex legal work will involve a certain amount of analysis by more than one attorney.   The Court should be advised, however, that these instances are few, and at no time was such a review simply a matter of interest.   Again, pursuant to the requirements of <u>Adventist Living Centers</u>, only the active attorney's time is billed in this Application for a document review conference.

## VI.   QUALIFICATIONS OF MOVANT; PRECLUSION OF EMPLOYMENT DUE TO ACCEPTANCE OF THIS CASE; AND COST OF COMPARABLE SERVICES

Adelman & Gettleman, Ltd. was established in 1983 and has been listed in The Martindale-Hubbell Bar Register of Preeminent Lawyers since approximately 1985. The firm is the only Chicago bankruptcy boutique firm having its lawyers recognized in Illinois Leading Lawyers Network; Best Lawyers in America, Woodward/White; World's Leading Lawyers by Chambers and Partners; America's Leading Lawyers for Business, Chambers and Partners; The Best Attorneys Network and Illinois "Super Lawyers."

Movant has brought to bear on the problems of the Debtor the collective skill and experience of the following members of Adelman & Gettleman, Ltd.:

NATHAN Q. RUGG

Mr. Rugg became a principal of the firm in January 2009, and has represented individual and corporate debtors, secured lenders, creditors, purchasers, guarantors, shareholders, and assignees for the benefit of creditors in workouts, liquidations, reorganizations, refinancings adversary proceedings, claim litigation and commercial litigation.   He has been named by his peers as a Rising Star in the Illinois Super Lawyers publication in the area of bankruptcy and reorganization for each of the years 2009-2015. Mr. Rugg has also received the Martindale Hubbell peer review rating of "AV Preeminent." Mr. Rugg was served as a Co-Chair for the Bankruptcy Court Liaison Committee and serves on the Volunteer Attorney Panel in the Northern District of Illinois.   Mr. Rugg is a 1997 graduate of Dartmouth College, and graduated from the University of Illinois College of Law in 2000 *cum laude*. While attending the University of Illinois, Mr. Rugg served as an Associate Editor of the University's Elder Law

Journal. He is a member of the Chicago Bar Association, Illinois Bar Association and the

American Bankruptcy Institute.

<u>ALEXANDER F. BROUGHAM</u>

Mr. Brougham joined the firm in September 2012 and focuses his areas of practice in

business bankruptcy, reorganization, and commercial litigation.   Mr. Brougham is a 2006

graduate of Colby College and in 2009 graduated from the Northeastern University School of

Law.   Upon graduating from law school, Mr. Brougham served as law clerk to two bankruptcy

judges in the United States Bankruptcy Court for the District of Massachusetts: first the

Honorable Joel B. Rosenthal, then the Honorable Melvin S. Hoffman when Judge Rosenthal

retired.   Mr. Brougham then served a one-year term as law clerk to the Honorable A. Benjamin

Goldgar of the United States Bankruptcy Court for the Northern District of Illinois

The following is a summary of the legal services rendered by each member of Movant

during the entire Final Application Period:

**<u>Services Rendered During the Final Application Period</u>**

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| NQR | 94.90 | $435 | $      41,281.50 |
| AFB | 16.3 | $325 | $       5,297.50 |
| TOTAL | 111.2 | | $      46,579.00 |

As a result of the acceptance of employment as counsel to the Debtor in this case,

Movant was precluded from rendering services in other substantial legal matters. Throughout the

Final Application Period , Mr. Rugg was required to spend a significant portion of his time on

matters involving the Debtor. The expertise of Mr. Rugg has been required in light of the

complexity of the Chapter 11 Case. The hourly rates charged by Movant are commensurate with

the skill and expertise brought to bear on the duties and responsibilities of the Debtor, and are

substantially less than the rates of many other bankruptcy practitioners of similar or lesser

experience.

## VII.   MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016

Except with respect to the sharing of compensation authorized under Section 504(b) of

the Code, Movant has not shared or agreed to share any award of fees received in connection

with this case with any person, firm or entity. There does not exist any agreement or

understanding between Movant, associates or employees, and any other person, firm or entity

with respect to the sharing of compensation herein.

## VIII.   SHORTENED NOTICE REQUESTED

Given the relatively few creditors in this Chapter 11 Case (approximately 10), that the

secured creditors will not be paid in full, and that use of funds is controlled by Urban and the

Interim Order, Movant respectfully requests that shortened notice be deemed adequate and

approved by this Court in accordance with Bankruptcy Rule 9006.   The typical required notice

of twenty-one days has been reduced by eight days. As evidenced by the Certificate of Service

filed in connection with that certain Notice of Hearing, Movant has given thirteen days written

notice of this Application to the following parties in interest in the Chapter 11 Case: (i) the office

of the U.S. Trustee; (ii) counsel to Urban; (iii) counsel to the SBA; (iv) all known creditors, and

(iv) all other parties of record who have requested notice and service of pleadings.   Movant

requests that, pursuant to paragraph Bankruptcy Rules 2002, 9006 and 9007, the Court deem the

foregoing notice sufficient under the circumstances, with no further notice required.

### IX. CONCLUSION AND REQUEST FOR ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

For the above and foregoing reasons, in consideration of the time and labor required and

performed in this case; the novelty and difficulty of the matters herein; the skill required to

properly and efficiently perform the legal services; the preclusion of employment of Movant in

other matters due to the complexity of this case during the Final Application Period; the

customary fees involved in comparable matters; the nature of the matters; the experience,

reputation and ability of Movant; the financial commitment required during throughout the Final

Application Period, and the results achieved; Movant respectfully requests (i) allowance and

payment of final compensation as counsel to the Debtor during the Final Application Period in

the amount of $46,579.00, and allowance of ordinary and necessary expenses incurred in

connection therewith in the amount of $164.84; (ii) approval of shortened notice; (iii) that the

foregoing amounts be determined to be reasonable and justified, and that payment of $46,743.84

be authorized and directed from Cash Collateral in the Chapter 11 Case; (iv) that the

compensation awarded for the Interim Application and the Second Interim Application be

allowed on a final basis; and for such other and further relief as is just. Movant therefore requests

entry of an Order, a proposed form of which is filed herewith, consistent with the foregoing.

Respectfully Submitted,

ADELMAN & GETTLEMAN, LTD.

By:  _  /s/ Nathan Q. Rugg  _
         One of its members

436388_1 9/4/15                                          24

NATHAN Q. RUGG, ESQ. (ARDC #6272969)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604
*Counsel for APK, LLC*

25